# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 13, 2013 Session

## JASON COOPER, ET AL. v. ROBERT LEDFORD FUNERAL HOME, INC., ET AL.

### Extraordinary Appeal from the Circuit Court for Unicoi County
No. C7768      Jean A. Stanley, Judge

---

### No. E2013-00261-COA-R10-CV-FILED-JULY 29, 2013

---

We granted Robert Ledford Funeral Home, Inc.'s ("the Funeral Home") application for extraordinary appeal pursuant to Tenn. R. App. P. 10 to consider the issue of whether the Funeral Home was entitled to summary judgment as a matter of law if the undisputed material facts demonstrate that its "on call" employee, Johnny Tipton, was not acting within the course and scope of his employment with the Funeral Home when the vehicle accident causing injuries to the plaintiffs occurred. We find and hold that the undisputed material facts demonstrate that Mr. Tipton was not acting within the course and scope of his employment with the Funeral Home, and that the Funeral Home is entitled to summary judgment as a matter of law.

### Tenn. R. App. P. 10 Extraordinary Appeal by Permission; Judgment of the Circuit Court Reversed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Richard M. Currie, Jr., Kingsport, Tennessee, for the appellant, Robert Ledford Funeral Home, Inc.

B. Andrew Glenn, Gate City, Virginia, for the appellees, Jason Cooper individually and on behalf of his daughter Brooke Cooper, and Sylvia Renfroe.

# OPINION

## Background

Jason Cooper, individually and on behalf of his daughter Brooke Cooper, and Sylvia Renfroe ("Plaintiffs") sued Johnny Tipton, Angela Frey, and Robert Ledford Funeral Home, Inc. concerning an automobile accident ("the Accident") that occurred in December of 2011 in Erwin, Tennessee. The Accident occurred when a vehicle operated by Mr. Tipton collided with a vehicle being operated by plaintiff Sylvia Renfroe. Plaintiffs Jason Cooper and Brooke Cooper were passengers in Ms. Renfroe's vehicle at the time of the accident. The vehicle being driven by Mr. Tipton belonged to defendant Angela Frey. At the time of the accident, Mr. Tipton, an employee of the Funeral Home, was traveling to the Funeral Home in order to clock in, obtain a Funeral Home vehicle, and then pick-up the body of a deceased individual.

The Funeral Home filed a motion for summary judgment alleging, in pertinent part, that Mr. Tipton was not in the course and scope of his employment with the Funeral Home at the time of the accident and, therefore, the Funeral Home could not be held liable. In support of their motion for summary judgment, the Funeral Home filed a statement of undisputed material facts,[1] which stated, in pertinent part:

> 4. Johnny Tipton was listed for payroll purposes as an employee of Erwin Memorial Funeral Home, Inc. Robert Ledford Funeral Home, Inc., Erwin Memorial Funeral Home, Inc., and Unicoi Funeral Home are three funeral homes located in Unicoi County, Tennessee. They have one owner and are operated together. Employees of one funeral home are expected to and do work at the other funeral home locations as needed. This was the case with Johnny Tipton.
> 5. Johnny Tipton was hired on October 31, 2011, as a general laborer.
> 6. Johnny Tipton's duties including [sic] picking up the remains of deceased persons from the facility or the residence where the death occurred and bringing them to Robert Ledford Funeral Home in a funeral home hearse.
> 7. Johnny Tipton was paid by the hour.
> 8. Johnny Tipton was not at work and was not paid until he clocked in.
> 9. Johnny Tipton was not paid to travel to the funeral home from his home and received no mileage reimbursement for traveling to the funeral home.

---

[1] In their response to the Funeral Home's motion for summary judgment Plaintiffs admit for purposes of summary judgment to the facts contained in the Funeral Home's statement of undisputed material facts.

10. On December 2, 2011, Johnny Tipton worked during the day and clocked out at 16:05 hours (4:05 p.m.), which ended his work day.

11. Although Johnny Tipton typically worked during regular business hours, he and other employees were subject to being called to return to work after regular business hours for the purpose of obtaining a funeral home hearse and picking up the remains of a deceased person. Upon being requested to retrieve the remains of a deceased person, Johnny Tipton, and other employees, were to report to 720 Ohio Avenue, Erwin, Tennessee, clock in, obtain the funeral home pick-up hearse and retrieve the remains.

12. At the time of the accident, which is the basis of the above-referenced lawsuit, Johnny Tipton was traveling to Robert Ledford Funeral Home from his residence in Unicoi, Tennessee, to clock in for the purpose of retrieving the remains of a deceased person. He was not traveling in a vehicle owned by, controlled by or authorized by Robert Ledford Funeral Home. He had not yet arrived at the funeral home to clock in to begin performing his job duties and was not in the course and scope of his employment.[2]

* * *

18. Johnny Tipton was never authorized to use any private vehicle in connection with his work at the funeral homes.

19. Johnny Tipton was never paid any mileage or other compensation or reimbursement for use of a personal vehicle in his work for the funeral homes.

20. Neither Johnny Tipton, nor any other employee have ever been paid any additional compensation for being subject to call after regular business hours to retrieve remains.

(citations to the record omitted).

After a hearing on the Funeral Home's motion for summary judgment, the Trial Court entered its order on November 21, 2012 denying the Funeral Home summary judgment after finding and holding, *inter alia*, that based upon the undisputed facts that the Trial Court could not determine whether or not Mr. Tipton was acting within the course and scope of his employment. The Funeral Home filed a Tenn. R. App. P. 10 motion for extraordinary appeal, which we granted by order entered on February 12, 2013.

---

[2]Even though Plaintiffs admit in their response to the Funeral Home's motion for summary judgment to the facts in the Funeral Home's statement of undisputed material facts, they continue to argue, even within their response, that Mr. Tipton was acting within the course and scope of his employment.

**Discussion**

We granted the Funeral Home's motion for extraordinary appeal to consider the sole issue of whether the Funeral Home was entitled to summary judgment as a matter of law if the undisputed facts demonstrate that its "on call" employee, Johnny Tipton, was not acting within the course and scope of his employment with the Funeral Home when the accident causing injuries to the Plaintiffs occurred.

With regard to summary judgments, this Court explained in *Estate of Boote v. Roberts*:

> The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

This action was filed [after July 1, 2011]. Therefore, the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101.[3] That statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> > (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> > (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

---

[3]Section 20-16-101 is applicable to all cases filed on or after July 1, 2011.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).[4]

*Estate of Boote v. Roberts*, No. M2012-00865- COA-R3-CV, 2013 Tenn. App. LEXIS 222, at \*\*24-25 (Tenn. Ct. App. March 28, 2013), *no appl. perm. appeal filed* (footnotes in original but renumbered).[5]

Dealing with an issue of first impression regarding liability under the doctrine of respondeat superior for "on-call" employees this Court explained:

> In order to impose liability under respondeat superior, it is necessary to show that the operator of a vehicle causing injury was, at the time of the accident, acting as a servant or employee of the owner, was engaged in the employer's business, and was acting within the scope of his employment. *See Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 386 (Tenn. 1986); *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992).
>
> \* \* \*
>
> In determining whether an "on call" employee is acting within the course and scope of his employment, thus casting liability on his employer, we find the following factors helpful:
>
>> 1. Whether, at the time of the accident, the employee's use of the vehicle benefitted the employer;
>> 2. Whether the employee was subject to the employer's control at the time of the accident;

---

[4]Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan*, which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 Tenn. App. LEXIS 453, 2012 WL 2628617, at \*5 n.3 (Tenn. Ct. App. July 5, 2012).

[5]The case now before us on appeal was filed in April of 2012. The parties do not dispute the summary judgment standard applicable to this case, and neither side raises an issue as to the constitutionality of Tenn. Code Ann. § 20-16-101. While there may be an unraised question as to the constitutionality of Tenn. Code Ann. § 20-16-101, we note that in the case now before us the result would be the same whether we applied the statutory standard or the standard set out by our Supreme Court in *Hannan*.

3. Whether the employee's after-hour activities were restricted while on call;
4. Whether the use of the vehicle at the time of the accident was authorized by the employer; and
5. What the employee's primary reason for using the vehicle was at the time of the injury-producing accident.

This list is not meant to be exclusive but is rather provided for guidance in future cases. It should be remembered, however, that the primary focus should be on whether the use of the vehicle at the time of the collision was within the course and scope of employment, and, as the *Johnson* [*v. Dufrene*, 433 So.2d 1109 (La. Ct. App. 1983)] court stated, each case should be determined upon its unique facts.

*Thurman v. Sellers*, 62 S.W.3d 145, 152-55 (Tenn. Ct. App. 2001).

In its November 21, 2012 order, the Trial Court discussed the five *Thurman* factors and found that two of the factors weighed in favor of a finding that Mr. Tipton had been acting within the course and scope of employment. Specifically, the Trial Court found:

1. Whether at the time of the accident, the employee's use of the vehicle benefitted the employer. The Court finds that it would. Mr. Tipton was using his vehicle to go to the Funeral Home at the request of his employer to pick up a hearse so that he might transport the remains of a deceased person for the Funeral Home.

* * *

5. What the employee's primary reason for using the vehicle was at the time of the injury producing accident. It is undisputed that the primary reason was to travel to the Funeral Home to conduct their business.

We disagree with the Trial Court on both of these points.

Importantly, Mr. Tipton was not utilizing a Funeral Home vehicle to commute to work. If he had been, our analysis could have been affected by this change in the factual scenario. The undisputed facts clearly show that Mr. Tipton was utilizing a private vehicle over which the Funeral Home exercised no control whatsoever. The record also shows that the Funeral Home exercised no control over the manner in which Mr. Tipton got to work or

-6-

the route he took to do so. Thus, the fact that Mr. Tipton was commuting to work in a private vehicle over which the Funeral Home exercised no control is significant to our analysis.

To say that Mr. Tipton's use of Ms. Frey's vehicle benefitted the employer when the evidence clearly shows that Mr. Tipton was using the vehicle simply to get to the Funeral Home would render every employee's commute to work a benefit to the employer. Certainly the employer benefits when its employee gets to work. To satisfy this *Thurman* factor, however, requires more. Furthermore, the fact that Mr. Tipton was "called in," rather than commuting to work on his normal schedule is a distinction without a difference as concerns this *Thurman* factor. There is no rational basis for distinguishing an employee commuting to work on his or her regular schedule from one commuting to work at an "irregular," or not regularly scheduled time. In both situations, the employee is doing the same thing, which is traveling to work. Either way, the employee's use of a vehicle to commute to work does not automatically provide a benefit to the employer.[6]

For the same reasons, we disagree with the Trial Court's finding relative to the fifth *Thurman* factor. The undisputed facts show that Mr. Tipton simply was commuting to work. Mr. Tipton was not running an errand for the Funeral Home at the time of the accident. Nor was he transporting something for the Funeral Home at that time. He was simply commuting to the job site so that he could clock in and begin his work of retrieving a Funeral Home hearse so that he could pick-up the body of a deceased individual. Thus, Mr. Tipton was not engaged in any task for the Funeral Home at the time of the accident. The fact that he was on his way to work does not render Mr. Tipton's primary use of the vehicle to be for the employer's benefit.

We agree with the Trial Court's implicit finding that consideration of the other three *Thurman* factors in light of the undisputed facts leads to the conclusion that Mr. Tipton was not acting within the course and scope of his employment at the time of the accident. As we have determined that the undisputed material facts in light of the *Thurman* factors show that Mr. Tipton was not acting within the course and scope of his employment at the time of the accident, the Funeral Home was entitled to summary judgment as a matter of law.

The Funeral Home argues in its brief on appeal that a line of worker's compensation cases should control our disposition of the issue now before us. We disagree

---

[6]We acknowledge that as the analysis in these cases is heavily fact dependent, it is possible that given a different factual scenario a finding that the employee's use of a vehicle to commute to work benefitted the employer might be proper.

for two reasons.  First, the case now before us is a tort case, and there are tort cases[7] dealing with this issue, as discussed above.  Second, worker's compensation cases involve a no-fault based system, whereas tort cases, such as the one now before us on appeal, inherently involve fault.  As such, we do not find the worker's compensation cases to be controlling of the issue now before us.  We will, however, discuss the worker's compensation cases discussed in both parties' briefs in order to point out that even if we applied worker's compensation law, the result in this case would be the same.

In *Howard v. Cornerstone Med. Assocs., P.C.*, a worker's compensation case, our Supreme Court specifically stated:

> travel to and from work is not, ordinarily, a risk of employment.  Rather, driving to work falls into the group of all those things a worker must do in preparation for the work day, such as dressing; and driving home from work is often a prerequisite to getting home.  While this travel is some modicum of benefit to the employer, travel to and from work is primarily for the benefit of the employee: if he doesn't present himself at the work place, he is not compensated for his labors.

*Howard v. Cornerstone Med. Assocs., P.C.*, 54 S.W.3d 238, 241 (Tenn. 2001) (quoting *Sharp v. Northwestern Nat'l Ins. Co.*, 654 S.W.2d 391, 392 (Tenn. 1983)).

Additionally, in the recent worker's compensation case of *Shannon v. Roane Med. Center*, our Supreme Court[8] dealt with the issue of whether an "on call" employee was acting within the course and scope of employment.  *Shannon v. Roane Med. Center*, No. E2011-02649-WC-R3-WC, 2013 Tenn. LEXIS 302 (Tenn. March 13, 2013).  The *Shannon* Court explained:

---

[7]Plaintiffs cite to *Russell v. City of Memphis, Tennessee* a tort case wherein this Court applied the *Thurman* factors.  *Russell v. City of Memphis, Tennessee*, 106 S.W.3d 655 (Tenn. Ct. App. 2002).  In *Russell* this Court held that the employee was not acting within the scope of employment because although on-call and driving a City vehicle, the employee was using the vehicle for personal use, his after-hours activities were not restricted, and his use of the vehicle did not benefit the City.  *Id*. at 658.  Plaintiffs assert that the case now before us is distinguishable from *Russell* because the employee was not on-call at the time of the accident, while Mr. Tipton had received a call to come to work, and, therefore, that *Russell* supports their position.  We disagree that this one change in the fact pattern merits a different result.  *Id*. at 658.

[8]By order entered March 13, 2013 our Supreme Court adopted, affirmed, and made the judgment of the Court the Special Workers' Compensation Appeals Panel's Memorandum Opinion.

The general rule is that an employee is not acting within the course of employment when the employee is going to or from work unless the injury occurs on the employer's premises. The primary basis for this rule, often referred to as the "coming and going rule," is that travel to and from work is not ordinarily a risk of employment and instead falls into the category of things any employee must do "in preparation for the work day" or as a "prerequisite to getting home." While travel to and from work may provide a modicum of benefit to the employer, such travel is typically considered to be primarily for the benefit of the employee. That is, unless employees travel to the workplace, they are not entitled to be compensated for their labors.

The coming and going rule does, however, have exceptions. If the employee is injured "while performing some special act, assignment, or mission at the direction of the employer," then the injury may be compensable. Likewise, an injury that occurs while an employee is traveling to or coming from work in a company vehicle may also be compensable. Additionally, our supreme court has recognized that an injury occurring while an employee travels to or from work is compensable when the travel itself "is a substantial part of the services for which the [employee] was employed and compensated." Factors that may lead to a finding that the travel was a substantial part of the employment services include the use of a vehicle by an employee to transport materials used in the employment or the compensation of the employee for food and travel expenses.

*Id*. at \*\*10-12 (citations omitted).

The *Shannon* Court determined that:

courts should consider the totality of the circumstances in determining whether the coming and going rule applies to an on-call employee, including but not limited to the following factors: (1) whether the employee is paid for time spent on call, either in the form of an hourly wage or increased annual salary; (2) the nature of any restrictions imposed by the employer during the employee's on-call hours; (3) the extent to which the employer benefits from the on-call system; and (4) the extent to which the on-call system requires additional travel that subjects the employee to increased risk compared to an ordinary commuter.

*Id*. at \*18. After considering the totality of the circumstances, the *Shannon* Court held that the employee was acting within the course and scope of her employment because she was

paid an hourly rate for the time she was on-call, the employer placed significant restrictions upon the on-call employee, the on-call system provided significant benefit to the employer, and the on-call system required additional travel that subjected the employee to increased risk. *Id*. at **18-21.

The *Shannon* Court also discussed three other Tennessee worker's compensation cases, which "at least partially addressed the issue of whether an on-call employee who is injured on the way to or from work has sustained an injury in the course of employment." *Id*. at *12. In *Howard v. Cornerstone Med. Assocs.*, benefits were denied because the employee was not on-call, was not subject to restrictions, was not required to remain within a certain radius of the job site, and was not compensated for time spent waiting for an assignment. *Howard v. Cornerstone Med. Assocs.*, 54 S.W.3d 238 (Tenn. 2001). In *Sharp v. Northwestern Nat'l Ins. Co.*, benefits were denied because the employer would call the employee to tell him when and where to report for work, but the employee was paid only for hours worked at the job site not for time waiting for a call or traveling to the job site. *Sharp v. Northwestern Nat'l Ins. Co.*, 654 S.W.2d 391 (Tenn. 1983). Likewise, in *Douglas v. Lewis Brothers Bakeries, Inc.*, benefits were denied because pursuant to the employment contract the employee was subject to being called to come to the job site when not on his regular shift to repair breakdowns in machinery and was guaranteed at least eight hours weekly at time and a half pay for this extra work, but was not paid for the extra work until he had clocked in. *Douglas v. Lewis Brothers Bakeries, Inc.*, 477 S.W.2d 202 (Tenn. 1972).

The facts in the case now before us are distinguishable from the facts in *Shannon*, and are much more similar to the facts in *Howard, Sharp,* and *Douglas*, wherein the employees were found to be not within the scope of employment. In the case now before us, the undisputed facts show that Mr. Tipton, although subject to being called in to work, was not paid until he clocked in at the Funeral Home job site.

Plaintiffs also argue that because Mr. Tipton's job required travel, the Funeral Home should be held vicariously liable as the injuries occurred while Mr. Tipton was traveling to work. We disagree. Mr. Tipton's job required him to utilize a Funeral Home vehicle to pick-up the bodies of deceased individuals. Mr. Tipton was not driving a Funeral Home vehicle at the time of the accident. Nor was he en route to pick-up a body. Rather, Mr. Tipton was utilizing a private vehicle and was en route to clock in to work where he would obtain a Funeral Home vehicle to enable him to do his job. The analysis would necessarily be different if the accident had occurred *after* Mr. Tipton had obtained a Funeral Home hearse and was en route to pick up the body of the deceased individual. To find that the Funeral Home should be held liable simply because Mr. Tipton's job required travel and the accident occurred while Mr. Tipton was traveling to work would result in employers being subject to vicarious liability while their employee was traveling to work *all* of the time

-10-

for *any* employee whose job required travel. Such a rule would extend to employees such as bus drivers, truck drivers, ones who drive company vehicles, etc., whether the employee was driving the employer's vehicle or a personal vehicle and whether the employee was acting within the course and scope of employment or not. Given all of the above, applying worker's compensation cases would result in the same outcome in the case now before us.

## Conclusion

The judgment of the Trial Court is reversed, Robert Ledford Funeral Home, Inc. is granted summary judgment, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellees, Jason Cooper, individually and on behalf of his daughter Brooke Cooper, and Sylvia Renfroe.

_____
D. MICHAEL SWINEY, JUDGE